ANDREW WICKLUND and Others v. JOHN LINDQUIST.[1]

November 8, 1907.

Nos. 15,426—(50).

**Delivery of Deed.**

　　Evidence considered, and *held*, that it conclusively shows that the deed here in question was made by the grantor and delivered to a third party, without reserving any right to recall it, to be delivered to the grantee upon the death of the grantor, and, further, that this was a good delivery on the happening of the contingency. Haeg v. Haeg, 53 Minn. 33, followed.

Action in the district court for Isanti county by the administrator and heirs at law of Olof Lindquist, deceased, to recover possession of

[1] Reported in 113 N. W. 631.

102 M.—21

a certain tract of land, $250 for use and occupation thereof, and for the cancellation of a certain instrument or deed from said intestate to the defendant. The complaint alleged there was no legal or valid consideration paid or given by the defendant to said Lindquist. The case was tried before Giddings, J., who at the close of plaintiffs' testimony granted defendant's motion to dismiss the case. From an order denying their motion for a new trial, plaintiffs appealed. Affirmed.

*Alfred P. Stolberg*, for appellants.

*Will A. Blanchard*, for respondent.

START, C. J.

The plaintiff. Wicklund is the administrator of the estate of Olof Lindquist, deceased, and the other plaintiffs and the defendant are his children and heirs at law. This action was brought in the district court in the county of Isanti to recover from the defendant the possession of eighty acres of land described in the complaint, $250 for use and occupation thereof, and to have a deed thereof from the deceased to the defendant cancelled. The complaint alleged that on July 10, 1900, the deceased, who died intestate, prepared an instrument purporting to be a warranty deed conveying the land to the defendant; that it never was delivered to him, but he fraudulently obtained possession of it from the scrivener, and caused it to be recorded in the office of the register of deeds, and went into possession of the land. The answer admitted defendant's possession of the land, put in issue the allegations of the complaint as to the nondelivery of the deed and the fraud of the defendant in obtaining possession thereof, and alleged, in effect, that in the year 1895 the deceased and defendant made a contract whereby the deceased agreed to convey the land to the defendant in consideration of his promise to remain on the farm, cultivate the same, and take care of the deceased during his life; that in consideration of such undertaking on the part of the defendant, and at the time stated in the complaint, the deceased executed and delivered to defendant a warranty deed of the land; and, further, that the defendant performed all of the terms of the contract on his part and cared for the deceased until his death. A jury was impaneled, by consent of the parties, to try the following issues:

1. "Was the alleged deed from Olof Lindquist to defendant, John Lindquist, described in the complaint, ever delivered by said Olof Lindquist?"

2. "Was there any consideration given by said defendant for said deed?"

The plaintiffs assumed the burden of proving the allegations of their complaint as to the delivery of and the consideration for the deed. When the plaintiffs, at the close of their evidence, rested their case, the court, on the motion of the defendant, dismissed the action, and the plaintiffs appealed from an order denying their motion for a new trial.

It conclusively appears from the pleadings and evidence that the deed was executed by the deceased, was left with the scrivener, and, after the death of the deceased, delivered to the defendant and recorded, and, further, that the defendant was in the possession of the land at the time the deceased died, and was in possession thereof at the commencement of this action. The question, then, for our consideration, is whether the evidence was sufficient to sustain a finding by the jury that the deed was never delivered. The plaintiffs called as a witness the attorney who drew the deed, and he testified, as to the execution and delivery of the deed, to the effect following:

Olof and John Lindquist, father and son, came to my office. The father stated that he wanted to deed a part of his land to his son John, as he had always stayed at home and helped him, and unless he received some payment by a part of his land John would have to leave home and look out for himself. The father requested me to draw the deed, and I did so. There was some talk that John should give his brothers and sisters, or at least some of them, something. There was some talk about making another agreement, but none was made. Q. "What did the father say with reference to the deed as to what should be done with that? A. After the deed was made, I told Lindquist, the old gentleman, that in order to make it legal there must be a delivery of the deed by him to John, and I threw the deed across the table to him, and he delivered it to John, and after that they told me to keep the deed until after his death, and after his death that the deed be delivered to John. I do not recollect who handed me the

deed. It seems to me there was some talk about an agreement being made; but the terms were not mentioned, as I remember, at that time. There was some talk that an agreement was to be made. The father told me not to deliver the deed until after his death. Some time afterwards he asked me if I had the deed. I said, 'Yes,' and he said, 'Keep it.' After his father's death John asked me for the deed. I gave it to him, and I said, 'John, there is nothing developed with reference to the delivery of this deed, and I don't want to have any trouble about it, and if there should be any trouble between yourself and your brothers and sisters I want you to fix it up all right with them,' and he said: 'You need not worry any about that. Everything will be all right between them.' And so I gave him the deed."

On his cross-examination the witness testified:

> Q. And he [the father] picked it [the deed] up and handed it to John? A. Yes, sir. Q. And John gave it back to you? A. Some one handed the deed back to me. I do not remember at this time who it was. It was given back to me, to be kept by me until after the old man's death. They agreed upon that, both of them.

While there was other evidence more or less relevant to the issue as to the delivery of the deed, there was none tending to contradict or materially to modify the testimony of the attorney to which we have referred. A consideration of the whole evidence leads to the conclusion, not only that it is insufficient to support a finding that the deed was not delivered, but that the undisputed evidence shows that the deed was delivered by the grantor without reserving any right to recall it to the attorney to be delivered after the death of the grantor to the grantee. This was a good delivery and upon the happening of the contingency the defendant's title to the land became absolute. Haeg v. Haeg, 53 Minn. 33, 55 N. W. 1114. The trial court rightly dismissed the action.

Order affirmed.